UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HERC RENTALS, INC.,

    Plaintiff,

v.                        Case No: 2:24-cv-885-JES-NPM

ACE AMERICAN INSURANCE CO.,

    Defendant.

_____

## OPINION AND ORDER

Herc Rentals, Inc. (Plaintiff or "Herc") filed a two-count Complaint (Doc. #1) against its insurance company, ACE American Insurance Co. (Defendant or "ACE"). In Count I, Herc seeks certain declaratory judgments, and in Count II, Herc asserts that ACE settled a third-party's claim against Herc in bad faith. ACE's Motion to Dismiss (Doc. #15) seeks to dismiss only the bad faith claim as premature under Florida law. Herc filed a Response in Opposition (Doc. #23), contending that Count II is properly before the Court.

For the reasons set forth below, the motion is **DENIED**.

**I.**

When analyzing a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual

support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). The Complaint (Doc. #1) alleges the following:

On February 27, 2020, Paul Robb, an employee of Herc, was loading a SkyTrak Telehandler onto a flatbed trailer. The trailer was owned by Herc, but Ryder Truck Rental, Inc. ("Ryder") was required by contract to perform safety inspections and maintain the trailer. Ryder was allegedly negligent in performing those duties, and the "flatbed trailer had holes in the wood and rotten wood that would allow a load to shift or fall and fasteners were missing." (Doc. #1-7, p. 5.) The Telehandler tipped over and severely injured Robb, who became a paraplegic. (Id. at 2.)

Herc and Ryder had separate business auto liability insurance policies with ACE, and Ryder had other excess policies with ACE.

**The ACE-Herc Policy**

ACE issued a business auto liability insurance policy to Herc ("ACE-Herc Policy"). (Doc. #1-1, p. 49.) The ACE-Herc Policy provided coverage of up to $5 million for any one accident or loss. (Id. at 37.) Section II.A of the ACE-Herc Policy provided that ACE had a "right and duty" to "defend" Herc against covered claims for accidental "bodily injury or property damage." (Id. at 56.) Section II.A also provided that ACE "may investigate and settle any claim or 'suit' as [it] consider[s] appropriate." (Id.)

Endorsement No. 23 of the ACE-Herc Policy established a

reimbursement of deductible requirement. (Id. at 90). It essentially provided that Herc "must reimburse" ACE "up to [$2,000,000] for any amounts [ACE] ha[s] paid under this policy." (Id.) Thus, even though ACE had to "defend" Herc "and pay damages within the policy limit," ACE had the right to "seek reimbursement from [Herc] for amounts within [Endorsement No. 23's] deductible." (Doc. #1, ¶ 12.) Endorsement No. 23 also required Herc to provide ACE some form of collateral. (Id. ¶ 13.) At Herc's behest, Bank of America issued a letter of credit ("BOA Letter of Credit") in which ACE was the named beneficiary.

Under the ACE-Herc Policy, Herc was allowed to name "additional insured[s]" under certain conditions. Endorsements Nos. 3, 7, 18, 36 (Doc. #1-1, pp. 51, 68, 83, 107). Generally, an additional "person or organization" would be covered so long as Herc was "required [] to name" them or had "agreed to include" them as an additional insured in a "written contract" "executed prior to the date of loss." (Id.)

**The ACE-Ryder Primary and Excess Policies**

A separate business auto liability insurance policy was issued to Ryder System, Inc. by ACE ("ACE-Ryder Primary Policy"). (Doc. #1, ¶ 27.) It had a coverage limit of $1 million for any one accident or loss, and an equivalent $1 million limit on its reimbursement of deductible endorsement. (Id. at ¶¶ 27-28.)

The Complaint further alleges that $9 million per accident in

excess coverage was available to Ryder under multiple excess policies issued by ACE ("ACE-Ryder Excess Policies").

**The Robb v. Ryder Lawsuit**

On December 3, 2020, Robb's attorney's sent Ryder a demand letter seeking the full $10 million available under the ACE-Ryder Primary and Excess Policies. (Id. at ¶ 30.) ACE and Ryder rejected that demand, taking the position that Ryder was not liable as Robb was solely at fault for his injuries. (Id. at ¶ 31.)

In letters sent to ACE on March 4, April 23, and October 5, 2021, Ryder sought coverage as an additional insured under the $5 million ACE-Herc Policy. (Id. at ¶ 32.) On November 4, 2021, ACE rejected Ryder's demands for coverage under that policy. (Id. at ¶ 33.) ACE stated that Ryder's coverage as an additional insured under the ACE-Herc Policy — even if available — would be limited to $1 million pursuant to the TLSA's terms.[1] (Id.)

Robb sued Ryder and three of its employees on November 12, 2021 ("Robb v. Ryder"). (Doc. #1-7.)

Before mediation in March 2023, ACE's relationship with Ryder had begun to deteriorate. (Doc. #1, ¶ 36.) Ryder was dissatisfied with the way that ACE had handled Robb's claim, and had accused

---

[1] Herc and Ryder had executed a Ryder SelectCare Preventative Maintenance Agreement ("PMA") on October 23, 2017 (Id. at ¶ 17) and a Truck Lease and Service Agreement ("TLSA") for the tractor — owned by Ryder and leased to Herc — to which the flatbed trailer was attached. (Id. at ¶ 19.)

ACE of distributing attorney-client and work-product privileged information and of engaging in a pattern of delay. (Id.) During conferences with Herc, ACE suggested that it could not go into mediation offering an amount below the deductible as that might further fracture its relationship with Ryder. (Id. at ¶ 37.) Herc demanded a written evaluation from ACE to justify a potential early, seven-figure settlement. (Id. at ¶ 38.) ACE never provided one, and merely responded that Robb was sympathetic and that damages could be significant. (Id.) ACE was aware, however, that Ryder had developed the following evidence prior to mediation:

- Ryder did not have a duty to inspect or maintain the trailer's floorboards;

- Robb's injuries were caused by his failure to wear a seatbelt; and

- The holes in the trailer's floorboards could not have caused the Telehandler to get stuck, and so, could not have contributed to the accident. (Id. at ¶ 39.)

**The Settlement and ACE's Post-Settlement Conduct**

On March 23, 2023, the parties to the Robb v. Ryder suit as well as ACE and Herc met to mediate the underlying claims. (Id. at ¶ 35.) In post-mediation discussions, over Herc's objections, ACE settled with Robb for a confidential amount. (Id. at ¶ 41.) Despite ACE's prior statements that Ryder's potential coverage under the ACE-Herc Policy was limited to $1 million as a putative additional insured, ACE agreed to contribute $2 million from the ACE-Herc Policy — the exact amount of Herc's reimbursable

- 5 -

deductible — towards the settlement. (Id. at ¶ 42.)

Once the settlement was finalized, ACE demanded that Herc reimburse it for $1,933,305.50. (Id. at ¶ 43.) That amount represented the $2 million deductible after subtracting a $66,694.50 allocated loss adjustment expense ("ALAE") that ACE calculated unilaterally. (Id.) Herc disputed that it owed anything to ACE, asserting that: (1) the settlement funds drawn from the ACE-Herc Policy did not constitute a "payment" within the meaning of Endorsement No. 23, and (2) ACE's unilateral ALAE calculation was incorrect — the correct amount was at least $166,235. (Id. at ¶¶ 44-45.)

Herc offered to pay $1,000,000 under its policy, which ACE had previously stated was the most that Ryder could have received as an additional insured under the ACE-Herc Policy. (Id. at ¶ 46.) ACE rejected that offer, and threatened to draw on the BOA Letter of Credit. (Id. at ¶ 47.) Herc paid the $1,000,000 to secure more time to discuss the matter with ACE. (Id.)

Then, through a third-party administrator, Herc provided documentation to show that the ALAE calculation should be $168,351.50. (Id. at ¶ 48.) ACE seemed to agree that any further reimbursement of Herc's deductible should be discounted by that amount. (Id. at ¶ 49.) However, on January 26, 2023, ACE unilaterally withdrew $933,305.50 from the BOA Letter of Credit. (Id. at ¶ 50.) After fees, Herc was charged $935,683.76, (id.)

which Herc asserts does not account for what ACE had previously agreed was the correct ALAE calculation.

To date, despite numerous requests, ACE has allegedly not provided Herc with analysis or updated analysis of: (1) Ryder's potential liability to support the amount of the confidential settlement with Robb; (2) Ryder's entitlement to coverage as an additional insured under the ACE-Herc Policy; (3) Ryder's entitlement to coverage for up to the $5 million limit of the ACE-Herc Policy; or (4) the allocation of settlement funds between the ACE-Herc and ACE-Ryder policies (id. at ¶¶ 51-53.)

Accordingly, Herc asserts that: (1) ACE's decision to pay the $2 million deductible from the ACE-Herc Policy was wholly unsupported by any reasonable view of Ryder's potential liability to Robb and potential coverage available under the ACE-Herc Policy (id. at ¶ 54); (2) while ACE had a contractual and discretionary right to settle the Robb v. Ryder suit, ACE's right to seek reimbursement under Endorsement No. 23 is narrower, and does not include settlements obtained without Herc's consent and without a threshold determination that ACE is "legally obligated to pay" (id. at ¶ 55); (3) even if Endorsement No. 23 could apply, ACE did not fulfill its duties to act in good faith and with due regard for the interests of its insured (Herc) in exercising its discretion to settle the Robb v. Ryder suit (id. at ¶ 56); (4) ACE breached its duties by agreeing, over Herc's objection, to

contribute the full amount of Herc's deductible to fund the settlement (id. at ¶ 57); and (5) Herc breached its duties by settling indiscriminately and with the improper purposes of (a) limiting its own exposure under the ACE-Ryder Primary and Excess policies, and (b) appeasing Ryder, its preferred customer (id.)

**Herc's Complaint Against ACE**

Herc's Complaint (Doc. #1) sets forth two counts. In Count I, Herc seeks declaratory relief under 28 U.S.C. § 2201, on: (1) whether Endorsement No. 23 applies to the Robb v. Ryder settlement; (2) if it applies, whether Ryder's coverage and ACE's right to seek reimbursement is limited to $1,000,000; and (3) whether the correct ALAE calculation includes $168,351.50 in legal fees (id. at 18-20.) In Count II, an action for common-law bad faith, Herc seeks compensatory and punitive damages, including the amounts that Herc paid ACE under protest and that ACE withdrew through the BOA Letter of Credit (plus fees), pre- and post-judgment interest, attorney's fees, costs, and other damages proximately caused by ACE's bad-faith conduct (id. at 25-26.)

**II.**

ACE asserts that Herc's bad faith claim in Count II should be dismissed as premature because Herc has not prevailed on the threshold issue of "coverage."[2] (Doc. #15.) ACE also contends

---

[2] It is not entirely clear what ACE means by "coverage." Initially, ACE asserted that this issue related to "whether Herc

that Herc must plead that the insurer's conduct resulted in an "excess judgment" against it, but has failed to do so.  (Id. at 7.)  ACE thus concludes that "[a]s a matter of law, the claim for common law bad faith is premature," which requires the dismissal of Count II.  (Id. at 7-8.)  Finally, ACE contends that Herc's request for punitive damages should be dismissed or stricken because the dismissal of the bad faith claim would render that request moot and, in any event, Herc's allegations are insufficient to support its punitive damages request.  (Id. at 8-11.)

Herc responds that its bad faith claim is ripe because it has alleged a "resolution of some kind in favor of the insured" and a "causal connection" between the damages claimed and ACE's bad faith, which does not always require an excess judgment.  Herc also asserts that its allegations suffice to establish a plausible entitlement to punitive damages.

Florida law on bad faith actions in connection with the handling of insurance claims has evolved over the years.  See Fridman v. Safeco Ins. Co. of Illinois, 185 So. 3d 1214, 1219-24 (Fla. 2016).  It has long been true that "a determination of liability and the full extent of damages is a prerequisite to a

---

was obligated to reimburse ACE $1.9 million under" Endorsement No. 23.  (Doc. #15, pp. 2-3.)  Later, ACE argued there has been no underlying "determination of coverage in favor of Herc," referring to the Count I allegation that ACE was not "legally obligated to pay" the claim against Ryder.  (Id. at 6.)

bad faith cause of action." Id. at 1216.  Stated differently, a dispute over insurance benefits must be "resolved favorably" before a bad faith action may proceed.  Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So. 2d 1289, 1291 (Fla. 1991).  However, "the insured is not obligated to obtain the determination of liability and the full extent of his or her damages through a trial and may utilize other means of doing so, such as an agreed settlement, arbitration, or stipulation before initiating a bad faith cause of action."  Fridman, 185 So. 3d at 1224.

Here, liability and the full extent of damages were determined when ACE settled the Robb v. Ryder suit.  While ACE contends that "there [] has been no determination of coverage in favor of Herc" (Doc. #15, p. 6), Blanchard's favorable resolution requirement is satisfied by an insurer's settlement with an insured or a third-party claimant.  Vest v. Travelers Ins. Co., 753 So.2d 1270, 1275 (Fla.2000) ("clarify[ing]" Blanchard's "broadly stated" rule and explaining that, "upon [] settlement, [a] claim for bad-faith damages . . . ripened because at that time the final element of the cause of action occurred"); Cammarata v. State Farm Fla. Ins. Co., 152 So. 3d 606, 612 (Fla. 4th DCA 2014).[3]

---

[3] ACE's reliance on Grey Oaks Country Club v. Zurich Am. Ins., No. 2:18cv639, 2019 WL 1359604 (M.D. Fla. Mar. 26, 2019) (Steele, J.), Navix Imaging, Inc. v. Lexington Ins. Co., No. 2:05cv-469, 2006 WL 2536782 (M.D. Fla. Aug. 31, 2006) (Steele, J.), and Choi v. Ace Am. Ins. Co., No. 21-10020, 2022 WL 1199645 (S.D. Fla. Feb. 17, 2022) is misplaced.  Those cases involved first-party, not

ACE also asserts that Herc's bad faith action is unripe because Herc "seeks a declaration that it is not obligated to reimburse [ACE] the full amount of the deductible under [Endorsement No. 23] because [ACE] was not 'legally obligated to pay' the claim against Ryder." (Doc. #15, p. 6.) The Court rejects that assertion as well. It is well-established "that an insurer's liability for coverage and the extent of damages, **and not an insurer's liability for breach of contract**, must be determined before a bad faith action becomes ripe." Cammarata, 152 So. 3d at 610 (emphasis added).

It is undisputed that ACE finalized a settlement in Robb v. Ryder and drew upon $2 million in coverage from under the ACE-Herc Policy to fund that settlement. That conduct amounts to a concession by ACE as to the "existence of liability" under the Policy, and also establishes the "extent of" compensatory damages that Herc may be owed.[4] Because those two elements have effectively

---

third-party, bad-faith claims. The insurance claimant in Grey Oaks received only "partial payment" under the policy, so there had not yet been a "determination as to the extent of [Grey Oak's] damages." 2019 WL 1359604, at *2-3. The plaintiffs in Navix Imaging "agree[d]" that "a cause of action for bad faith ha[d] not yet accrued." 2006 WL 2536782, at *3. The plaintiffs in Choi also "seem[ed] to agree" that there was "no final determination" of the defendant's liability. 2022 WL 1199645, at *2.

[4] To the extent that Herc is entitled to any consequential damages, such as "interest, court costs, and reasonable attorney's fees," Imhof, 643 So. 2d at 619, for obvious, practical reasons, the extent of those damages can only be established after a bad faith claim has been litigated.

- 11 -

been pled, there is "no impediment as a matter of law to a recovery of damages." Vest, 753 So.2d at 1275.  In other words, a claim for bad-faith damages caused by ACE's pre- and post-settlement conduct appears to have ripened.  Id.  Whether ACE also breached the contract after the settlement by improperly coercing Herc into paying it $1 million and by drawing almost another $1 million from the BOA Letter of Credit does not affect the ripeness of Herc's bad faith claim.  Cammarata, 152 So. at 610.

ACE next asserts that "in the third-party liability context, the pleading **must** allege that the insurer's breach 'results in an excess judgment being entered against its insured.'"  (Doc. #15, p. 7) (emphasis added).  That categorical assertion is wrong.[5] Imhof v. Nationwide Mut. Ins. Co., 643 So. 2d 617, 618 (Fla. 1994) ("there is no need to allege an award exceeding the policy limits to bring an action for insurer bad faith"); Perera, 35 So. 3d at 899-902; Brookins v. Goodson, 640 So. 2d 110, 114 (Fla. 4th DCA 1994), overruled on other grounds, State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 62 (Fla.1995).

Rather, as Herc correctly notes, the standard is that "there must be a causal connection between the damages claimed and the

---

[5] Indeed, ACE cites Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893 (Fla. 2010) for a proposition — "bad faith cannot be maintained when an insured does not face exposure to an excess judgment," (Doc. #15, p. 7) — that Perera clearly rejected, see id., 35 So. 3d at 902 ("an excess judgment is not always a prerequisite before a bad-faith case can be brought against the insurer").

insurer's bad faith." Perera, 35 So. 3d at 903-04; Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 7 (Fla. 2018) ("The damages claimed by an insured in a bad faith case 'must be caused by the insurer's bad faith.'").  ACE does not challenge Herc's complaint for failing to allege a causal connection between the damages claimed and ACE's purported bad faith.

Thus, ACE's motion to dismiss on these grounds is **DENIED**.

ACE summarily asserts that "the complaint does not contain any facts whatsoever in support of Herc's request for punitive damages . . . as required by Fla. Stat. § 768.72(2)."  (Doc. #15, p. 10.)  With the bad faith claim surviving the present motion, the punitive damages relief also remains.

Accordingly, it is now

**ORDERED**:

Defendant ACE American Insurance Co.'s Motion to Dismiss (Doc. #15) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this  10th  day of March 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record