UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HERC RENTALS, INC.,

    Plaintiff,

v.   Case No: 2:24-cv-885-JES-NPM

ACE AMERICAN INSURANCE CO.,

    Defendant.

## OPINION AND ORDER

This matter comes before the Court on the Motion for Reconsideration pursuant to Fed. R. Civ. P. 54(b), 59(e), and 60(b)[1] (Doc. #31) filed by Defendant ACE American Insurance Co. ("Defendant" or "ACE"). Plaintiff Herc Rentals, Inc. ("Plaintiff" or "Herc") filed a Response in Opposition (Doc. #35.) For the reasons set forth below, the Motion for Reconsideration is denied.

**I.**

Paul Robb ("Robb"), an employee of Herc, was injured while loading equipment onto a flatbed trailer owned by Herc. Non-party Ryder Truck Rental, Inc. ("Ryder") allegedly had a contractual duty to inspect and maintain that trailer. Robb sued Ryder for

---

[1] Rules 59(e) and 60(b) "do not apply here," as those rules "only come into play after a final, appealable judgment is entered." Hornady v. Outokumpu Stainless USA, LLC, 118 F.4th 1367, 1379 (11th Cir. 2024). Accordingly, the motion is **DENIED** on the Rule 59(e) and Rule 60(b) grounds. Nonetheless, the standards of those Rules will be considered as part of the Court's Rule 54(b) determination.

his injuries. Herc and Ryder each had separate insurance policies with ACE, and ACE undertook the defense of the claim. Shortly after mediation, ACE settled the claim with Robb. ACE funded the settlement with, *inter alia*, $2 million from Herc's Policy. That amount is an exact match of the reimbursable deductible available under Herc's Policy. ACE then demanded a reimbursement from Herc for the $2 million.

Herc denied that it owed ACE anything. Herc relied on ACE's representations during the Robb litigation that: (1) Ryder was not an additional insured under Herc's policy; and (2) even if Ryder were an additional insured, it was limited to $1 million in coverage based on its inspection-and-maintenance contract with Herc. In addition, at the time of settlement, Ryder had developed evidence to dispute duty and causation, and to raise a contributory negligence defense. Herc also asserted that it was entitled to a setoff of almost $200,000 for allocated loss adjustment expenses ("ALAE").

When Herc disputed ACE's demand for payment, ACE threatened to draw on certain collateral to satisfy the alleged payment obligation. To buy time, Herc paid ACE $1 million, the amount that ACE had previously claimed was the maximum that Ryder could be entitled to as an additional insured. Soon afterwards, however, ACE drew an additional $1 million from Herc's collateral.

## II.

Herc filed a two-count Complaint (Doc. #1) against ACE.  In Count I, Herc seeks certain declaratory judgments.  In Count II, Herc asserts that ACE settled the Robb lawsuit in bad faith.

ACE filed a Motion to Dismiss (Doc. #15), which targeted only the bad faith claim as premature under Florida law.  ACE asserted that Herc had not prevailed on the threshold issue of "coverage,"[2] and that Herc had failed to plead that the insurer's conduct resulted in an "excess judgment" against ACE.  (Id. at 7.)  ACE concluded that "[a]s a matter of law, the claim for common law bad faith is premature," requiring its dismissal.  (Id. at 7-8.)[3]

This Court denied the motion to dismiss (Doc. #26), reasoning as follows:

First, Herc's bad-faith claim was ripe because "liability and the full extent of damages were determined" when ACE settled the Robb lawsuit.  (Id. at 10.)  When ACE finalized that settlement and drew upon $2 million in coverage from Herc's Policy to fund it, that conduct amounted to "a concession by ACE as to the 'exi-

---

[2] As this Court noted in its prior Opinion and Order (Doc. #26), ACE has not been "entirely clear" what it means by the term "coverage."  (Id. at 8.)

[3] ACE also contended that Herc's request for punitive damages should be dismissed or stricken because the dismissal of the bad faith claim would render that request moot.  (Id. at 8-11.)  Herc did not disagree about the effect of dismissal.

stence of liability' under [Herc's] Policy, and also established the 'extent of' compensatory damages that Herc may be owed." (Id. at 11.) Florida case law holds that a dispute over insurance benefits must be "resolved favorably" before a bad faith action may proceed. (Id. at 10) (citing Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So. 2d 1289, 1291 (Fla. 1991)). The requirement of a favorable resolution is satisfied when an insurer settles with an insured or a third-party claimant. (Id.) (quoting Vest v. Travelers Ins. Co., 753 So.2d 1270, 1275 (Fla. 2000) ("clarify[ing]" Blanchard's "broadly stated" rule and explaining that, "upon [] settlement, [a] claim for bad-faith damages . . . ripened because at that time the final element of the cause of action occurred") and citing Cammarata v. State Farm Fla. Ins. Co., 152 So. 3d 606, 612 (Fla. 4th DCA 2014)).

Second, the Court was unpersuaded by ACE's argument that the bad faith action was not ripe merely because Herc sought "a declaration that it is not obligated to reimburse [ACE] the full amount of the deductible under [Endorsement No. 23] because [ACE] was not 'legally obligated to pay' the claim against Ryder." (Id. at 11.) Pursuant to Florida case law, only "an insurer's liability for coverage and the extent of damages, and not an insurer's liability for breach of contract, must be determined before a bad faith action becomes ripe." (Id.) (quoting Cammarata, 152 So. 3d at 610).

Third, the Court rejected ACE's categorical argument that "in

the third-party liability context, the pleading **must** allege that the insurer's breach 'results in an excess judgment being entered against its insured,'" to preliminarily establish causation. (Id. at 12.)  The main case that ACE had cited in support, Perera v. U.S. Fid. & Guar. Co., 35 So. 3d 893 (Fla. 2010), "clearly rejected" that proposition.  (Id. at 12 n.5.)  Instead, Florida case law holds that a plaintiff need only plead "a causal connection between the damages claimed and the insurer's bad faith." (Id. at 12-13) (citing Perera, 35 So. 3d at 903-04 and quoting Harvey v. GEICO Gen. Ins. Co., 259 So. 3d 1, 7 (Fla. 2018)).  ACE did not challenge Herc's complaint for failing to allege such a causal connection.

ACE now moves the Court to reconsider its prior decision (Doc. #31.)  For the reasons set forth below, the motion is **DENIED**.

### III.

A non-final order may be revised at any time before the entry of a final judgment.  Fed. R. Civ. P. 54(b).  In Hornady v. Outokumpu Stainless USA, LLC, the Eleventh Circuit attempted to "precisely define" the standards governing motions for reconsideration under Rule 54(b):

> This Court has yet to precisely define the standards governing Rule 54(b) motions to reconsider. In our silence, some district courts have applied the more definite standards from Rule 59(e) or Rule 60(b) . . . But those standards — whether addressing newly discovered evidence or manifest errors under Rule 59(e), or mistake, inadvertence, fraud, and the like under Rule 60(b)

> — do not apply here. Rules 59(e) and 60(b) only come into play after a final, appealable judgment is entered.
>
> Rule 54(b) is relevant at earlier stages of a case. It provides that an order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. When, as here, a district court enters a non-final order, it should evaluate motions to reconsider that order under the standards inherent in Rule 54(b) — plenary authority to reconsider, revise, alter or amend a non-final order before the entry of final judgment.

Hornady, 118 F.4th at 1379-80 (internal citations and quotation marks removed). It is "firmly rooted in the common law" that federal courts have "inherent authority" to correct their own errors, so long as they retain jurisdiction over an action. Id. at 1380. That inherent power was "recognized — not changed — by Rule 54(b)." Id. (explaining that Rule 54(b) merely "re-establish[ed] an ancient policy with clarity and precision." (quoting Fed. R. Civ. P. 54(b); 1946 Advisory Committee Notes)). As such, district courts "enjoy plenary power to reconsider non-final rulings" and those decisions are "committed to [their] sound judgment." Id.

But as Hornady explains, in this Circuit such decisions are to be guided by the following considerations:

> (1) If a movant can meet the significantly higher showing for reconsideration under Rules 59(e) or 60(b), the district court should not hesitate to revisit its prior ruling.
>
> (2) If a movant fails to meet those higher standards, the district court should still consider whether reconsideration is appropriate.

    (3)    If a movant has simply rehashed arguments already considered and rejected, then a refusal to reconsider typically will not constitute an abuse of discretion.

    (4)    The more time between a district court's ruling and a party's motion to reconsider, the less willing the court should be to entertain the party's request.

    (5)    In most instances — to advance the interests of finality, stability, and predictability — district courts should hesitate to revisit their earlier interlocutory orders. Parties must be able to rely on the rulings that progressively direct proceedings toward trial.

Hornady, 118 F.4th 1367, 1380–81. Hornady concludes, in summary, that "district courts have discretion to revisit their prior interlocutory orders, considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." Id. at 1381.

### IV.

With that in mind, the Court begins by considering whether ACE can meet the "significantly higher" showing needed for reconsideration under Rule 59(e).[4] In the Eleventh Circuit, the "only

---

[4] ACE cannot meet the heavy burden of Rule 60(b). That rule provides six grounds for relief from a final judgment or order. See Fed. R. Civ. P. 60(b)(1)–(6). ACE only seeks relief under the sixth, Rule 60(b)'s catch-all provision, "any other reason that justifies relief." (Doc. #31, p. 4) (quoting Fed. R. Civ. P. 60(b)(6)). The Eleventh Circuit, however, has long construed that provision narrowly. See Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984). Relief under Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances." Id. "The party seeking relief has the

grounds" for granting a Rule 59(e) motion are "newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007). Such a motion cannot be used to "relitigate old matters" or "raise argument or present evidence that could have been raised prior to the entry of judgment." Id. at 1343. ACE does not contend that any newly discovered evidence justifies reconsideration. Rather, ACE asserts that reconsideration is needed to "correct clear error or prevent manifest injustice" on the following points:

> A. Several "coverage issues" have yet to be decided, and it is a "well-established principle of Florida law that a bad faith claim cannot accrue until [those] have been resolved." (Doc. #31, pp. 2, 4-8, 14-16.)
>
> B. The Court "mistakenly conflated ACE's settlement *for Ryder* with a 'determination of coverage *in favor of Herc*.'" (Id. at 3, 8-14.)
>
> C. Herc "fails to allege, and cannot allege, an excess judgment or its functional equivalent." (Id. at 4, 17-22.)
>
> D. Since there is "no excess judgment against Herc, indeed Herc was never sued, Herc lacks standing to sue for bad faith." (Id. at 4, 22-23.)

The Court rejects ACE's first three points. It is well-

---

burden of showing that absent such relief, an 'extreme" and 'unexpected' hardship will result." Id. And even where "exceptional" circumstances are shown, "whether to grant the requested relief" remains "a matter for the district court's sound discretion." Cano v. Baker, 435 F.3d 1337, 1342 (11th Cir. 2006). ACE has not even asserted, let alone provided evidence, that "extreme and unexpected hardship will result" absent relief.

established that a Rule 59(e) motion is not a vehicle for "rais-[ing] argument . . . that could have been raised prior to the entry of judgment." King, 500 F.3d at 1343.

ACE makes several arguments for the first time. For example, it now asserts that "a bad faith claim cannot **accrue** until coverage issues have been resolved." (Doc. #31, pp. 4-8.) And, retreating from its earlier position, ACE now contends that even if "'[a]n excess judgment . . . is not always a prerequisite to a bad faith action,' courts will still require that there be some type of **functional equivalent**." (Id. at 17-22.)

The motion for reconsideration also consists almost entirely of case law that ACE has not cited or relied upon before. ACE inexplicably asseverates that, unlike Herc, "ACE cited directly applicable cases, including the Birmingham Fire decision." (Id. at 6.) That is not only untrue, but easily verifiable.[5] See (Doc. #15, pp. 1-12.) ACE then uses several pages to discuss Birmingham Fire Ins. Co. of Pa. v. Comcar Indus., Inc., 2008 WL 4065695 (M.D. Fla. Aug. 18, 2008), which, to be clear, ACE has not previously cited. In total, twenty pages in ACE's twenty-four-page motion for reconsideration rely on new authority. As this Court has stated elsewhere, "it would be an unusual rule that required a

---

[5] Recall that by filing pleadings, written motions, or other papers to the Court, counsel are certifying, *inter alia*, to the truth of their contentions. Fed. R. Civ. P. 11(b)(3).

district court to alter or amend an order based on cases not previously relied upon by either party." Opinion and Order, Hawk v. Hartford Ins. Co. of the Midwest, No. 2:24-cv-823, (M.D. Fla. Mar. 17, 2025), (ECF No. 31, p. 3).

ACE's fourth point is also rejected. For that argument, ACE relies completely on an opinion by a Louisiana state court of appeals.[6] It would be especially "unusual" for a district court to "alter or amend an order" where the cases "relied upon" in a motion for reconsideration "do not constitute binding precedent." Id. at 3-4 (citing Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 134.02[1] [d], p. 134-26 (3d ed. 2011))).

Thus, ACE has not met the "significantly higher" showing needed for reconsideration under Rule 59(e). And for the additional reasons given below, the Court concludes that reconsideration un-

---

[6] On a separate note, this argument is improperly presented in a Rule 12(b)(1) motion to dismiss for lack of standing that is embedded in the instant motion for reconsideration. (Id. at 22-23.) Thus, in addition to the reasons given above, the embedded motion is **DENIED** as it violates Local Rules 3.01(a) and (g). M.D. Fla. Loc. R. 3.01(a) (stating that a motion must be set forth in a "single document"); id. at 3.01(g) (stating, with a few exceptions, that "[b]efore filing a motion in a civil action . . . [a] movant must confer with the opposing party in a good faith effort to resolve the motion"); see King v. Bd. of Cnty. Commissioners, Polk Cnty., Fla., No. 8:16-CV-2651-T-33TBM, 2017 WL 1093647, at *13 (M.D. Fla. Mar. 23, 2017); Griffin v. Calderon, No. 6:24-CV-1432-PGB-LHP, 2025 WL 895893, at *1 (M.D. Fla. Mar. 24, 2025); Cooper v. Milliman, Inc., No. 2:23-CV-00028-JES-NPM, 2025 WL 1023740, at *1 (M.D. Fla. Apr. 7, 2025) (Steele, J.).

der Rule 54(b) is not merited.

"Under the party presentation principle, American courts function in an adversarial system of adjudication whereby we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. This system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." United States v. Campbell, 26 F.4th 860, 872 (11th Cir. 2022) (citations omitted). Within this system, it is ordinarily "inappropriate for a court to raise an issue *sua sponte*." Id.

Florida law on first- and third-party causes of action for bad-faith insurance settlement has certainly been developed, refined, and clarified since the time of Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815 (Fla. 1938) and its earliest progeny. It may well be that Herc cannot state a claim under either of the above-mentioned causes of action. ACE has not yet, however, persuaded the Court of that in a dispositive motion. See Campbell, 26 F.4th at 872. And a motion for reconsideration is no place to raise such arguments for the first time.

Accordingly, it is now

**ORDERED:**

Defendant ACE American Insurance Co.'s Motion for Reconsideration pursuant to Fed. R. Civ. P. 54(b), 59(e), and 60(b) (Doc. #31) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this  13th  day of June 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record